**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ALAMANCE REGIONAL MEDICAL CENTER, INC.
1240 Huffman Mill Road
Burlington, NC 27215

and

ANMED HEALTH
d/b/a ANMED
800 North Fant Street
Anderson, SC 29621

and

ATLANTICARE REGIONAL MEDICAL CENTER, INC.
1925 Pacific Avenue
Atlantic City, NJ 08401

and

CAPITAL HEALTH SYSTEM, INC.
d/b/a CAPITAL HEALTH MEDICAL CENTER - HOPEWELL
One Capital Way
Pennington, NJ 08534

and

CAPITAL HEALTH SYSTEM, INC.
d/b/a CAPITAL HEALTH REGIONAL MEDICAL CENTER
750 Brunswick Avenue
Trenton, NJ 08638

and

ENGLEWOOD HOSPITAL AND MEDICAL CENTER, INC.
d/b/a ENGLEWOOD HOSPITAL
350 Engle Street
Englewood, NJ 07631

and

Case No. 1:24-cv-_____

1

EOH ACQUISITION GROUP, LLC d/b/a EAST ORANGE
GENERAL HOSPITAL, CAREWELL HEALTH
300 Central Avenue
East Orange, NJ 07018

and

EPISCOPAL HEALTH SERVICES, INC.
327 Beach 19th Street
Far Rockaway, NY 11691

and

FORREST COUNTY GENERAL HOSPITAL
6051 U.S. Highway 49
Hattiesburg, MS 39401

and

HMH HOSPITALS CORPORATION
d/b/a JERSEY SHORE UNIVERSITY MEDICAL CENTER
d/b/a JERSEY SHORE MEDICAL CENTER
1945 NJ-33
Neptune, NJ 07753

and

HMH HOSPITALS CORPORATION
d/b/a RARITAN BAY MEDICAL CENTER, RARITAN BAY
MEDICAL CENTER – PERTH AMBOY
530 New Brunswick Avenue
Perth Amboy, NJ 08861

and

HMH HOSPITALS CORPORATION
Successor in Interest to JFK HEALTH
d/b/a MUHLENBERG MEDICAL CENTER, INC.
343 Thornall St.
Neptune, NJ 07753

and

HOLY NAME MEDICAL CENTER, INC.
d/b/a HOLY NAME HOSPITAL
718 Teaneck Road
Teaneck, NJ 07666

and

HUDSON HOSPITAL OPCO, LLC
d/b/a CHRIST HOSPITAL
176 Palisade Avenue
Jersey City, NJ 07306

and

HUMC OPCO, LLC
d/b/a HOBOKEN UNIVERSITY MEDICAL CENTER
308 Willow Avenue
Hoboken, NJ 07030

and

INSPIRA MEDICAL CENTERS, INC.
d/b/a INSPIRA MEDICAL CENTER VINELAND
1505 W. Sherman Avenue
Vineland, NJ 08360

and

KENNEDY UNIVERSITY HOSPITALS, INC.
d/b/a JEFFERSON HEALTH – NEW JERSEY
2201 Chapel Avenue West
Cherry Hill, NJ 08002

and

MEMORIAL HOSPITAL AT GULFPORT
4500 Thirteenth Street
Gulfport, MS 39501

and

THE MOSES H. CONE MEMORIAL HOSPITAL OPERATING
CORPORATION
d/b/a CONE HEALTH, THE MOSES H. CONE MEMORIAL
HOSPITAL
1200 N. Elm Street

Greensboro, NC 27401

and

PRISMA HELATH GREENVILLE MEMORIAL HOSPITAL
701 Grove Road
Greenville, SC 29605

and

SINGING RIVER HEALTH SYSTEM
f/k/a SINGING RIVER HOSPITAL
d/b/a PASCAGOULA HOSPITAL
d/b/a OCEAN SPRING HOSPITAL
d/b/a SINGING RIVER GULFPORT
2809 Denny Avenue
Pascagoula, MS 39581

and

SOUTH NASSAU COMMUNITIES HOSPITAL
d/b/a MOUNT SINAI SOUTH NASSAU
One Healthy Way
Oceanside, NY 11572

and

ST. BARNABAS HOSPITAL
d/b/a SBH HEALTH SYSTEM
4422 Third Avenue
Bronx, NY 10457

and

UPMC PINNACLE HOSPITALS
111 South Front Street
Harrisburg, PA 17101

and

VIRTUA MEMORIAL HOSPITAL OF BURLINGTON
COUNTY, INC.
d/b/a VIRTUA MOUNT HOLLY HOSPITAL
175 Madison Avenue
Mt. Holly, NJ 08060

and

VIRTUA WEST JERSEY HEALTH SYSTEM, INC.
d/b/a VIRTUA VOORHEES HOSPITAL
100 Bowman Dr.
Voorhees, NJ 08043

      Plaintiffs,

v.

XAVIER BECERRA,
in his official capacity as Secretary of the United States
Department of Health and Human Services
200 Independence Avenue, SW, Room 700-E
Washington, DC 20201-0004

      Defendant.

### COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF UNDER THE MEDICARE ACT AND ADMINISTRATIVE PROCEDURES ACT

1. The Plaintiff hospitals listed above ("**Providers**") bring this action under 42 U.S.C. § 1395oo(f)(1) for judicial review of a final decision of the Defendant, Xavier Becerra, acting in his official capacity as the Secretary of the United States Department of Health and Human Services ("**HHS**"), and acting through HHS's Provider Reimbursement Review Board ("**PRRB**" or "**Board**").

2. In a decision dated April 26, 2024, the Board dismissed the Plaintiffs' challenges to a regulation promulgated by the Centers for Medicare and Medicaid Services ("**CMS**"), the agency within HHS charged with administering the Medicare program. **Exhibit 1**.  The Providers challenged CMS's publication of a final rule in the Federal Register regarding CMS's Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage. 88 Fed. Reg. 37772 (June 9, 2023) ("**Part C Days Final Rule**" or "**Final Rule**").

3.      The Board asserted the following jurisdictional grounds upon which it based its dismissal:  (1) the Final Rule was not an appealable "final determination" within the context of 42 U.S.C. § 1395oo(a)(1)(A)(ii) and 42 C.F.R. §§ 405.1835(a); (2) even if it were, the Providers failed to establish that the Final Rule applied to them; and (3) the Providers did not properly appeal CMS's publication of SSI Ratios related to the Final Rule. **Exhibit 1**.

4.      The Board's dismissal was improper, because Plaintiffs satisfied the requirements to appeal under 42 U.S.C. § 1395oo(a)(1)(A) by appealing the Secretary's final determination as to the payment amount under subsection (d) of 42 U.S.C. § 1395ww that is applicable to the cost years at issue

5.      The Plaintiffs seek an order vacating and setting aside the Board's decision and its underlying findings and conclusions as arbitrary and capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence. *See* 5 U.S.C. § 706.

## JURISDICTION AND VENUE

6.      This action arises under Title XVIII of the Social Security Act, as amended, 42 U.S.C. § 1395 *et seq*. (the "**Medicare Act**"), and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

7.      This court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which grants Medicare providers the right to obtain judicial review of any final Medicare program agency decision.

8.      Venue is proper in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1).

## PARTIES

9.      The Plaintiffs here are the Medicare-participating hospitals identified in **Exhibit 2**, which have appealed their disproportionate share hospital ("**DSH**") payments for the fiscal years identified.

10.     Defendant Xavier Becerra is the Secretary of the Department of Health and Human Services and is the federal officer responsible for administering the Medicare program pursuant to the Social Security Act.  Defendant is sued in his official capacity.  References to "Defendant" or "Secretary" herein are meant to refer to him, his subordinates, his official predecessors or successors, and the Department and its components that he oversees, as the context requires.

## LEGAL BACKGROUND

### Medicare Payment Determinations and Appeals

11.     The Medicare program, established under Title XVIII of the Social Security Act, is a public health insurance program that furnishes health benefits to the aged, disabled and certain individuals with end-stage renal disease. 42 U.S.C. § 1395, *et seq*.

12.     The Medicare program consists of four parts: A, B, C, and D. Inpatient hospital services are paid under Part A of the Medicare statute. *Id.* § 1395d(a). Physician and certain outpatient clinic services are paid under Medicare Part B. *Id.* § 1395k(a). Medicare Part C is an optional managed care program that pays for services that would otherwise be covered under Medicare Parts A and B. *Id.* §§ 1395w-21–1395w-29. Medicare Part D is an optional insurance program for prescription drugs. *Id.* §§ 1395w-101–1395w-154. This action concerns payments under Medicare Part A.

13.     Since 1983, the Medicare program has paid acute-care hospitals for the operating costs of inpatient hospital services under a prospective payment system ("**PPS**"). *Id.* § 1395ww(d); 42 C.F.R. pt. 412. Under inpatient PPS, Medicare pays hospitals a predetermined, standardized amount per case, subject to certain payment adjustments. *Id.*

14.     One such payment adjustment is the DSH payment, which is provided to hospitals, including the Plaintiffs, that treat a disproportionate share of low-income patients. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

15.     Hospitals dissatisfied with a "final determination of the Secretary *as to* the amount of the payment under subsection (b) or (d) of section 1395ww," can file an appeal with the Board under § 1395oo(a) (emphasis added). This includes the DSH payment calculation located in § 1395ww(d)(5).

16.     To file an administrative appeal, a hospital must request a Board hearing within 180 days after notice of the Secretary's final determination, and the amount in controversy must be at least $10,000 for an appeal filed by an individual hospital, or $50,000 for an appeal filed by a group of hospitals presenting a common question of fact or legal challenge.  *Id.* § 1395oo(a), (b); 42 C.F.R. § 405.1835(a).

17.     Under 42 C.F.R. § 405.1835(b), the content of the hearing request must include: a "demonstration that the provider satisfies the requirements for a Board hearing as specified in paragraph (a) of this section, including a specific identification of the final . . . Secretary determination under appeal," *id*. at (b)(1); "a separate explanation of why, and a description of how, the provider is dissatisfied with the specific aspects of the final . . . Secretary determination" in the manner described, *id*. at (b)(2); and, at issue here, "a copy of the final ... Secretary determination under appeal *and any other documentary evidence the provider considers necessary to satisfy the hearing request requirements* of paragraphs (b)(1) and (b)(2) of this section," *id*. at (b)(3) (emphasis added).

18.     Additionally, Board Rule 7.1 requires that a hearing request must "identify the cost reporting periods affected by the determination" and provide "a copy of the final determination."

Rule 7.1.1. Board Rules can be found at https://www.cms.gov/files/document/current-prrb-rules-v-32-board-order-no-4-december-15-2023.pdf.  For an appeal from a Federal Register Notice, the request must "[i]dentify the Federal Register citation and provide the applicable pages of the Federal Register." Rule 7.1.2.3. For any "other" final determination not listed in the Rules, the provider must "identify the specific final determination being appealed and the authority granting the Board's jurisdiction over the dispute." Rule 7.1.2.5.

19.      A final decision by the Board, including a jurisdictional dismissal, is subject to judicial review.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 1877(a).

### DSH Payments and Treatment of Medicare Part C Days

20.      The formula at the core of hospitals' DSH payments is the disproportionate patient percentage ("**DPP**"), which is a proxy intended to measure a hospital's low-income patient population. The DPP is the sum of two fractions: the Medicare Fraction and the Medicaid Fraction. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

21.      The Medicare Fraction numerator is "the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income [("**SSI**")] benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator . . . is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under part A." *Id.* § 1395ww(d)(5)(F)(vi)(I).

22.      The Medicaid Fraction numerator is "the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX, but who were not entitled to benefits under

part A of this subchapter, and the denominator . . . is the total number of the hospital's patient days for such period." *Id.* § 1395(d)(5)(F)(vi)(II).

23.     Medicare Part C refers to the Medicare Advantage program, which permits beneficiaries to enroll in managed care plans offered by private companies approved by the Secretary. *Id.* § 1395w-21. Under the Medicare statute, a Medicare beneficiary eligible for Medicare Advantage is entitled to elect to receive benefits (other than qualified prescription drug benefits) either through the original Medicare fee-for-service program under Parts A and B, or though enrollment in a Medicare Advantage plan under Part C. *Id.* § 1395w-21(a)(1); 42 C.F.R. § 422.50.

24.     Patients enrolled in a Medicare Part C plan receive their benefits under Part C of the Medicare statute, not Part A. 42 U.S.C. § 1395w-21(a)(1); 42 C.F.R. § 422.50.

25.     CMS calculates every hospital's Medicare Fraction, also known as an SSI Ratio, by matching patient data held by CMS concerning Medicare beneficiaries and data held by the Social Security Administration concerning SSI beneficiaries. FY 2011 Final Rule, 75 Fed. Reg. 50,041, 50,277-81 (Aug. 16, 2010). Hospitals are unable to calculate their own SSI Ratio because they lack access to the necessary data. *Id.*

26.     The substantive question at issue in the Providers' dismissed appeals is whether patients enrolled in Part C plans are "entitled to benefits under part A," and days associated with those patients therefore belong in the Medicare Fraction, and not the Medicaid Fraction, during the period from 2005 to 2013.

27.     Before October 1, 2004, CMS construed the term "entitled" in the DSH statute to mean that a patient was "entitled to benefits under Part A" when Medicare Part A covered and paid for the patient's hospitalization. *See* 42 C.F.R. § 412.106(b)(2)(1)(2003). Part C days were

therefore excluded from the Medicare Fraction, and, if the patient was eligible for Medicaid, the days were counted in the Medicaid Fraction numerator.

28.     In 2004, CMS published a final rule adopting a new policy of counting Part C Days in the Medicare Fraction. FY 2005 IPPS Final Rule, 69 Fed. Reg. 48916, 49099 (Aug. 11, 2004). CMS's attempt in the final rule to apply the new policy retroactively was struck down in 2011 in *Ne. Hospital Corp. v. Sebelius*, 657 F. 3d 1, 13 (D.C. Cir. 2011).

29.     CMS's attempt to apply the final rule prospectively was also struck down in 2014 because CMS committed a fatal error in the rulemaking process such that the final rule was not a logical outgrowth of the proposed rule. *Azar v. Allina Health Services*, 746 F.3d 1102, 1108 (D.C. Cir. 2014) ("**Allina I**"); 42 U.S.C. § 1395hh(a)(4).

30.     Despite the policy having been stricken, in 2014, CMS published a list of hospitals' SSI Ratios for FFY 2012 that included Part C Days in the Medicare Fraction. The Supreme Court held that CMS's publication of the SSI Ratios constituted a "statement of policy" that "change[d] a substantive legal standard governing . . . payment for services," and, under § 1395hh(a)(2), the policy could not take effect until it underwent notice-and-comment rulemaking procedures. *Azar v. Allina Health Servs.*, 587 U.S. 566, 572-80 (2019) ("**Allina II**").

31.     On remand from the Supreme Court, CMS was tasked with providing a remedy for hospitals whose DSH payments were calculated under the invalidated policy.

32.     On August 6, 2020, CMS published its proposed remedy, asserting that it would once again apply a retroactive policy of including Part C Days in the Medicare Fraction. Part C Days Proposed Rule, 85 Fed. Reg. 47723 (Aug. 6, 2020).

33.     Within two weeks, CMS issued CMS Ruling 1739-R (Aug. 17, 2020), which, by its own terms, provided "notice that the Provider Reimbursement Review Board (PRRB) and other

Medicare administrative appeals tribunals lack jurisdiction over certain provider appeals regarding the treatment of patient days associated with patients enrolled in Medicare Advantage plans in the Medicare and Medicaid fractions of the disproportionate patient percentage." The Ruling "applie[d] only to appeals regarding patient days with discharge dates before October 1, 2013 that arise from Notices of Program Reimbursement (NPRs) that are issued before CMS issues a new final rule to govern the treatment of patient days with discharge dates before October 1, 2013, . . . ." *Id*. CMS-1739-R is available at https://www.cms.gov/regulations-and-guidanceguidancerulingscms-rulings/cms-1739-r.

34.     On June 9, 2023, CMS finalized its proposal "that a patient enrolled in [a Part C] plan remains entitled to benefits under Medicare Part A and will be counted in the Medicare Fraction of the DPP and not counted in the numerator of the Medicaid fraction," for discharges occurring before October 1, 2013. Part C Days Final Rule, 88 Fed. Reg. 37,772, 37,790 (June 9, 2023).

35.     Between August and November 2023, CMS republished on its website the same SSI fractions that were previously released for fiscal years prior to FFY 2014, asserting that the SSI Ratios were published "pursuant to CMS-1739-F," *i.e*., the Part C Days Final Rule.  CMS relabeled under CMS-1739-F the exact SSI Ratio files that it had created a decade or longer ago. CMS did not re-calculate the ratios as part of the post-*Allina II* rulemaking in 2020-2023, and CMS never formally announced the reissuance of the existing SSI Ratios.  CMS, *Disproportionate Share Hospital (DSH)*, https://www.cms.gov/medicare/payment/prospective-payment-systems/acute-inpatient-pps/disproportionate-share-hospital-dsh.

12

## PROCEDURAL BACKGROUND

### The Providers' Part C Days Appeals

36.     From 2008 through 2019, the Plaintiffs filed timely appeals at the Board under § 1395oo(a)(1)(A)(i) from NPRs issued by their respective Medicare Administrative Contractors ("**MACs**") challenging CMS's policy of counting Part C Days in the Medicare Fraction of their DPPs for fiscal years ranging from 2005 through 2013. The case numbers of these appeals were identified for every Provider and fiscal year in attachments to the designated representative letters filed with the Providers' appeals of the 2023 Part C Days Final Rule.  There are two exceptions: (a) Virtua Memorial Hospital of Burlington County, Provider No. 31-0057, has not to date received an initial NPR from its MAC for its fiscal year ending December 31, 2011, and so could not and did not file an earlier appeal; and (b) Capital Health Regional Medical Center, Provider No. 31-0092, received its NPR from its MAC for its fiscal year ending December 31, 2008, but through oversight did not file an appeal.

37.     As a matter of Board record and/or public court record, these Board cases were either:  (a) granted expedited judicial review by the Board, appealed to the United States District Court for the District of Columbia, consolidated with *In Re: Allina II-Type DSH Adjustment Case,* No. 19-mc-00190, and then remanded to the Secretary by court order granting the Secretary's motion for voluntary remand in accordance with CMS Ruling 1739-R (*see* Orders and attachment, Dkt. 74, 74-1, 99, Case No. 19-mc-190 (D.D.C. Jan. 19, 2021, March 12, 2021)) or (b) remanded to the Secretary by the Board in accordance with CMS Ruling 1739-R, then similarly appealed to the United States District Court for the District of Columbia and consolidated with *In Re:  Allina II-Type DSH Adjustment Case,* No. 19-mc-00190.

38.     After the Final Rule was published advising hospitals that CMS's proposed remedy in response to its loss in *Allina II* was to apply exactly the same policy that was previously invalidated, the Providers appealed "the Secretary's final determination—contained in the Final Rule and the accompanying SSI ratios—as to the DSH payment amount they will receive for the fiscal years at issue." **Exhibit 3** (a copy of the issue statement filed by all of the Providers in their Board appeals challenging the Final Rule).

39.     The Providers' appeals identified the final determination under appeal by citing the Part C Days Final Rule in the federal register and its publication date of June 9, 2023, and provided a copy of the final determination including the full 22-page text of the pertinent section of the Final Rule, as well as an active hyperlink to the SSI Ratio files. The appeals also contained an issue statement describing the nature of the Providers' dissatisfaction with the final determination (**Exhibit 3**); a calculation of the Providers' amounts in controversy for each impacted fiscal year; a designation of representative letter that identified the claims covered by the representation through a list of the Providers' previously appealed fiscal years and the Board case number associated with those appeals; a statement that no adjustment or protested amount is required for Board jurisdiction; and a statement that due to its retroactive nature, this particular final determination impacted more than one fiscal year.

40.     On April 26, 2024, the Board *sua sponte* dismissed the Providers' appeals, basing its decision on factual inaccuracies about the contents of the Providers' appeal requests and legal inaccuracies about the requirements of an appeal request.

41.     Providers now timely seek judicial review under 42 U.S.C. § 1395oo(f)(1).

## ASSIGNMENT OF ERRORS

42.     The Medicare Act allows for judicial review of the Board's jurisdictional dismissal "pursuant to the applicable provisions under chapter 7 of title 5," of the APA. 42 U.S.C. § 1395oo(f)(1).

43.     The APA provides that the "reviewing court shall... hold unlawful and set aside agency action... found to be... (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;... (C) in excess of statutory jurisdiction, authority or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. § 706(2).

### Count I: Board Dismissal for Lack of Jurisdiction
### (Final Rule not a final determination)

44.     The Plaintiffs hereby incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

45.     The Board's decision to deny the Plaintiffs' appeals for lack of jurisdiction is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law.

46.     The Board improperly concluded that "the Part C policy issued in the June 2023 Final Rule that the Providers appealed for the fiscal years at issue is not an appealable 'final determination' within the context of 42 U.S.C. § 1395oo(a)(1)(A)(ii) and 42 C.F.R. § 405.1835(a)." **Exhibit 1**.

47.     The Secretary's June 2023 Final Rule constitutes an appealable "final determination." The Medicare Statute at 42 U.S.C. § 1395oo(a)(1)(A)(ii) authorizes Board appeals when a provider is "is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection ... (d) of section 1395ww of this title." This includes the calculation

of a hospital's DSH patient percentage, which is the sum of two percentages, the hospital's Medicare/SSI percentage and its Medicaid percentage. 42 U.S.C. § 1395ww(d)(5)(F)(vi). The Secretary's June 2023 Final Rule addresses the treatment of inpatient days attributable to patients enrolled in Medicare Part C plans for purposes of calculating hospitals' DSH payment adjustments for discharges occurring before October 1, 2013. Specifically, the June 2023 Final Rule includes inpatient days attributable to patients enrolled in Medicare Part C plans in the numerator and denominator used to calculate the Medicare/SSI ratio and excludes such days attributable to Medicaid-eligible patients from the numerator of the Medicaid percentage for all cost reporting periods before October 1, 2013.

48.     In fact, the Secretary characterized the June 2023 Final Rule as a "final action creat[ing] a policy governing the treatment of days associated with beneficiaries enrolled in Medicare Part C for discharges occurring prior to October 1, 2013, for the purpose of determining the additional Medicare payments to subsection (d) hospitals under section 1886(d)(5)(F) of the Social Security Act (the Act)." June 2023 Final Rule, 88 Fed. Reg. at 37772 (emphasis added).

49.     The Secretary's publication of Medicare/SSI fractions applying the June 2023 Final Rule is also a "final determination" that is appealable to the Board under 42 U.S.C. § 1395oo(a)(1)(A)(ii). *Battle Creek Health Sys. v. Becerra*, No. CV 17-0545 (CKK), 2023 WL 7156125, at *5-*6 (D.D.C. Oct. 31, 2023).

50.     In addition, the Board's jurisdictional decision is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and otherwise not in accordance with law because the Board improperly concluded that "the Providers' appeal request failed to meet the content requirements under 42 C.F.R. § 405.1837(c)." Specifically, the Board found that "Providers' appeal request failed to meet the content requirements under 42 C.F.R. § 405.1837(c) based on its failure

to demonstrate that the June 2023 Final Rule was, in fact, a payment determination *retroactively* applicable to them for the fiscal years at issue consistent with the terms of that Final Rule." **Exhibit 1**.

51.     The Plaintiffs' appeal requests identified the cost reporting periods under appeal, which were all cost porting periods prior to October 1, 2013, and, therefore, were clearly subject to the June 2023 Final Rule. The Plaintiffs also included in their appeal requests the date of the final determination, the pages and citation of the applicable Federal Register notice and a link to the CMS webpage announcing the SSI percentages issued pursuant to the June 2023 Final Rule, a financial impact statement, an issue statement, a statement regarding audit adjustments and protest amounts, and a provider representation letter. Therefore, the Board decision dismissing the appeal is invalid.

52.     Furthermore, the Board's finding that it lacked jurisdiction over a Federal Register appeal because the Providers failed to provide documentation establishing the procedural history of their prior NPR-based appeals for all cost reporting periods to which CMS is applying the Final Rule, is arbitrary, capricious, an abuse of discretion, not otherwise in accordance with law, and unsupported by substantial evidence.

53.     The Board's finding that the Providers included no information about their prior NPR-based appeals is contradicted by the record and moreover not required by law. The Providers appealed from a final determination of the Secretary, and nowhere in the statutes, regulations, or Board Rules is there a requirement that hospitals appealing from a final determination of the Secretary also provide documentation of a final determination of a MAC. The requirement that Providers include "any other documentary evidence the provider considers necessary to satisfy the hearing request requirements of paragraphs (b)(1) and (b)(2) of this section [jurisdictional

requirements]" is not a requirement that the Providers include copies of all information the Board could possibly wish to review. *See* 42 C.F.R. § 405.1835(b)(3)  The Providers' hearing requests identified the prior Board cases and claims to which the Final Rule would apply. The Board has access to the records of those appeals and has the authority to request that the Providers document the procedural history of the prior appeals if the Board believes it is necessary to resolve jurisdiction in these cases. The Board's decision to dismiss the appeals because it found that the Providers' documentation insufficiently established the unprecedented and convoluted, decades-long procedural history of these claims, without first requesting such information from the Providers, was furthermore an abuse of discretion.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request relief as follows:

a.        A declaration by this Court invalidating and setting aside the Board's final decision dismissing the Plaintiffs' appeals from the Secretary's final determination in the June 2023 Final Rule;

b.        An order from this Court awarding Plaintiffs the legal costs and fees incurred by the Plaintiffs; and

c.        An order from this Court providing such relief in law and/or equity as this Court may deem just and proper.

Respectfully submitted,


s/ *Leslie Demaree Goldsmith*
Leslie Demaree Goldsmith (DC Bar #422759)
Brian R. Iverson (DC Bar #1012843)
BASS, BERRY & SIMS PLC
1201 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20004
Telephone: (202) 827-7083
leslie.goldsmith@bassberry.com
biverson@bassberry.com

*Attorneys for Plaintiffs*

45085019.1